JOPLIN & WESTERN RAILWAY COMPANY, *Appellant*, v. KANSAS CITY, FT. SCOTT & MEMPHIS RAILROAD COMPANY.

Division One, November 11, 1896.

1. **Injunction**: ASSESSMENT OF DAMAGES: APPELLATE PRACTICE. Under Revised Statutes, 1889, section 5500, an appeal may be taken from an order dissolving an injunction while a motion for assessment of damages on the injunction bond is pending, the effect of the appeal being to suspend the action on the motion until the determination of the appeal.

2. **Railroad**: CONDEMNATION PROCEEDING: ESTOPPEL. Plaintiff railroad obtained from a mill company a right of way twenty-five feet wide for a spur track to a mill; filed a plat of the route, constructed its road and made no effort to acquire additional land until after defendant railway had bought from the mill company the twenty-five foot strip remaining between plaintiff's right of way and the mill and had begun grading; whereupon plaintiff brought proceedings to condemn said strip. *Held*, that although a railroad company is authorized under Revised Statutes, 1889, section 2543, to acquire by condemnation a strip of land one hundred feet wide, yet plaintiff should be restricted to the quantity it elected to·take before defendant's right accrued.

*Appeal from Jasper Circuit Court.*—HON. M. G. McGREGOR, Judge.

AFFIRMED.

*W. H. Phelps* and *E. O. Brown* for appellant.

(1)   The remedy by injunction was clearly available to the plaintiff on principles of equity jurisprudence. Story, Eq. Jur., sec. 927; *Osborn v. Bank*, 9 Wheat. 740; *Croton Turnpike Co. v. Ryder*, 1 Johns.

Ch. 611; *Railroad v. Railroad*, 12 Phila. 642, *Contra, Railroad v. Moss*, 23 Cal. 323; *Boston & L. R. Corp. v. Salem & L. R. Co.*, 2 Gray, 27. (2) The prior right to particular land attaches to the company which first actually surveys and adopts a route and files its survey according to law. Pierce on Railroads, 157; 2 Wood on R'ys, sec. 237. (3) The statute giving a railway company the right to acquire a strip of land one hundred feet wide for right of way, is a legislative declaration of the necessity of that much ground for railway purposes, and it is not competent to show that less than one hundred feet is sufficient, the legislature having furnished a conclusive presumption of the necessity for that much by legislative fiat. *Railroad v. Cornell University*, 52 Wis. 537; *Railroad v. Jett*, 25 Mo. 540. (4) The fact that the relator acquired twenty-five feet for right of way by purchase from the Empire Zinc Company beginning the construction of its road, does not restrict or limit its right to acquire any additional right of way needed, up to one hundred feet, either by purchase or condemnation proceedings. The fact that the Empire Zinc Company was willing to donate to the railway company a strip of land twenty-five feet in width, and no more, does not prevent the railway company from acquiring all land necessary up to the statutory limit upon making compensation as required by law. *Fisher v. Railroad*, 10 Am. & Eng. R. R. Cases, 14; *Railroad v. Dunbar*, 100 Ill. 110; *Railroad v. Railroad*, 26 Kan. 669.

*Wallace Pratt, C. W. Blair*, and *I. P. Dana* for respondent.

(1) The appeal herein should be dismissed, because the record showed that the case had not been finally disposed of by the trial court when the appeal was

taken. R. S. 1889, secs. 2246, 4542, 5500; *Railroad v. Railroad*, 94 Mo. 535; Black on Judgments, sec. 24; Freeman on Judgments [4 Ed.], secs. 29, 34; *Runnels v. Wash. Univ.*, 96 Mo. 230; *Railroad v. Berger*, 32 Mo. 578; *Keystone Iron Co. v. Martin*, 132 U. S. 91. (2) Plaintiff's claim as to the effect of a railroad company's filing a profile map does not correctly express the law of Missouri on this subject, and, even if it did, on the record and facts in this case, plaintiff would not be entitled to the relief sought herein. *Snell v. Harrison*, 83 Mo. 651; *Judy v. Bank*, 81 Mo. 404; R. S. 1855, chap. 39, secs. 23 and 29; Genl. Stats. Mo. 1865, p. 332; Wagner's Stats., chap. 37, art. 2; Laws 1877, pp. 369, 370; Const. Mo., art. 2, sec. 21; *Railroad v. Shepard*, 9 Kan. 647; *Railroad v. Abbott*, 44 Kan. 176; *Converse v. Railroad*, 18 Mich. 459; *State ex rel. v. Kamp*, 8 N. E. Rep. (Ind.) 714; *Railroad v. Railroad*, 11 Abbott (N. C.), 386; Endlich on Interpreta. of Stats., secs. 340–343. (3) If plaintiff is entitled to the relief asked for, it must be by reason of the general equities arising from the facts in the case, and on those facts the chancellor was right in refusing plaintiff's request.

MACFARLANE, J.—This is a suit in equity to enjoin the defendant from constructing its railroad over a strip of land twenty-five feet wide through the west half of the southwest quarter of section 15, township 27, range 33, in Jasper county.

The proceedings and evidence show that plaintiff and defendant, both railroad corporations, were locating and constructing lines of railroad from Joplin to a mining district located in a southerly direction and about four miles therefrom. The Empire Zinc Company owned the tract of land above described, and had thereon extensive mills for reducing lead and zinc ore. Each party wished to reach this mill with its railroad.

For doing so there appears to be only one accessible route, and this was quite narrow. Plaintiff first adopted its route and made and filed in the office of the clerk of the county court a profile map thereof. The center of the line so adopted was located about thirty-seven and one-half feet west of the mill of the zinc company. For a right of way through this land plaintiff bought a strip of land twenty-five feet wide, the east line thereof being about twenty-five feet distant from the mill. After plaintiff had partly constructed its road at this point, defendant located its road over the land between the mill and the land on which plaintiff was constructing its road, and on the seventeenth day of May contracted with the zinc company for the conveyance to it of all said land for its right of way. On the same day defendant took possession and commenced preparation for building its road thereon. Afterward, on the same day, defendant commenced proceedings to condemn "for main track and side track," the whole of the land for which defendant had so contracted.

This proceeding is to restrain defendant from constructing its road on said land.

The case was heard on answer of defendant, and a motion to dissolve the injunction. The court found for defendant, dismissed plaintiff's bill, and dissolved the temporary injunction theretofore granted, and rendered a final judgment in favor of defendant.

Plaintiff in due time filed a motion for a new trial, which was overruled by the court. On the same day defendant filed a motion for the assessment of damages, which was continued by the court to the next term. On the same day also plaintiff filed its affidavit for an appeal, which was allowed.

I. A preliminary motion to dismiss the appeal was made by defendant. This motion was taken with the case and should be first determined.

The ground for the motion is, that there could be no final judgment, from which an appeal could be taken, until the motion for the assessment of damages had been disposed of.

The statute merely provides that, "upon the dissolution of an injunction, in whole or in part, damages shall be assessed by a jury, or if neither party require a jury, by the court." R. S. 1889, sec. 5500.

In the case of *Railroad v. Burger*, 32 Mo. 578, after a judgment dismissing plaintiff's bill and dissolving the preliminary injunction, defendant filed his motion for the assessment of damages occasioned by the injunction. The damages were assessed at $5,000. At the same term the defendant filed a motion to set aside the verdict and judgment, which the court sustained, and defendant appealed. The court in passing upon the case dismissed the appeal, and gave this reason therefor: "The order setting aside the verdict and judgment left the case standing on Burger's motion for the assessment of damages; and for anything appearing in the record, that motion still remains undisposed of. Until a final disposition is made of it, no appeal lies." The statute under which this ruling was made was the same as that now in force.

It does not clearly appear, from the brief statement of the case made by the court, whether an appeal was taken from the order setting aside the verdict for damages, or from the judgment dismissing the bill. It is, however, clearly stated in the opinion, that, until there has been a final disposition of the motion for the assessment of damages, no appeal lies.

We do not think the view then taken by the court a practical construction of the statute, or that its spirit has been followed by the later cases. It is apparent that damages should not be assessed until there has been a final determination that the injunction was im-

properly granted. An appeal by plaintiff from a judgment dismissing his bill, and dissolving the temporary injunction, may result in a reversal of the judgment and in reinstating the injunction, or even in ordering it made perpetual. In such case there could be no damages, and an assessment previously made, possibly at great cost to litigants, and after occupying much time of the court, would be entirely nugatory. The statute, failing to prescribe the course of procedure, should be given a practical construction. This can only be done effectively by separating the proceeding for injunction from that for damages, and making the proceedings for the recovery of damages independent of the injunction suit. The provision of the statute for the assessment of damages takes the place of a suit on the bond. If an appeal is taken from the judgment in the injunction suit the motion to assess damages should be suspended until the determination of the appeal.

In *Cohn v. Lehman*, 93 Mo. 584, it was expressly held that an action for damages on an injunction bond could not be maintained until a final decree had been rendered in the cause in which the bond was given, and that a judgment, from which an appeal was taken, without supersedeas, was not final until the appeal had been disposed of.

In *Nolan v. Johns*, 108 Mo. 433, it was held that the sureties on an injunction bond were entitled to appeal from a judgment for damages, though the proceedings were by motion.

These decisions show, very conclusively, that the court did not regard the original suit for injunction and the proceedings for the assessment of damages, as one and inseparable, as seems to have been held in case of *Railroad v. Burger, supra.*

We are of the opinion, therefore, that the assessment of damages on an injunction bond properly fol-

lows a final determination of the injunction suit, and that an appeal from the final judgment may be taken while a motion for the assessment of damages is pending. The appeal, in such case, would suspend action on the motion until the case was finally determined.

The motion to dismiss the appeal is therefore denied.

II.  Plaintiff had, on the eighth of May, 1890, secured by contract with the owner, and by a conveyance from him, a right of way, twenty-five feet in width, over a tract of land, and had filed with the clerk of the county court a profile map of the route adopted in compliance with the requirements of the statute. R. S., sec. 2564. Not deeming the right of way sufficient for its purposes, on the evening of the seventeenth day of May, 1890, it instituted proceedings to condemn twenty-five feet additional, over said land.

During this time defendant was making preparation to build a railway in the same direction, and near to that being constructed by plaintiff. The object of each of these companies was to reach and secure business from the mill of the Empire Zinc Company which was largely engaged in the reduction of zinc ore. This zinc company owned the land through which the parties proposed to construct their roads and operated its mill upon it.

On the seventeenth day of May, 1890, but prior to the hour at which plaintiff commenced proceedings of condemnation, defendant obtained from the zinc company a verbal agreement to convey to it for right of way the land lying between plaintiff's right of way and the mill, and immediately took possession. This was the same land defendant undertook to condemn and covered the entire space between plaintiff's right of way and the mill.

Under these facts the question is, which one of

these parties has the prior right to the use of the land in question.

The general statutes of the state confer upon railroad corporations the power "to lay out its road, not exceeding one hundred feet in width, and to construct the same; and for the purposes of cuttings and embankments, to take as much more land as may be necessary for the proper construction and security of the road." R. S. 1889, sec. 2543. The land for right of way may be taken by voluntary grant from the owner or by condemnation. R. S. 1889, art. 6, chap. 42.

Section 2564 provides: "Every railroad company shall, before constructing any part of their road into or through any county named in their articles of association, and every company heretofore formed and now operating roads in any county in this state, shall make a profile map or maps of the route intended to be or already adopted by such company in such county, which map or maps shall show the actual survey, location, and distance of the roadbed through the congressional sections through which such road runs, and also the location and number of miles of main and side tracks of such road in such county, and which map or maps shall be certified by the president and engineer of the company or a majority of the directors, and filed in the office of the clerk of the county court of the county in which the road is to be or has been made. The company shall give written notice to all actual occupants of the land over which the route of the road is so designated, and which has not been purchased by or given to the company."

That plaintiff had made and filed its profile map of the route adopted for its railway, previous to the time defendant purchased its right of way, is conceded. It may be also taken as established that the land purchased by defendant from the zinc company is within

fifty feet of the center of plaintiff's located line, and that, if plaintiff, by the location of its route and filing its profile map, became entitled to take and hold for its right of way a strip of one hundred feet in width, the land purchased by defendant would be included therein.

Plaintiff insists that, by adopting its route and making and filing its profile map, it became entitled to take by purchase or condemnation, and hold, for its right of way, one hundred feet of the land of the zinc company upon which a lien, or right, became impressed, which could not be defeated by the sale and conveyance by the owner to defendant.

Counsel have discussed, interestingly, the purpose of the statute requiring the profile map to be made and filed, and the effect the proper performance of the duty has in securing a right to the land over which the route is located and the want of power in the owner thereafter to dispose of it so as thereby to defeat or impair the right. But we do not think the record in this case requires us to enter into a consideration of those questions.

The statute does not require that the right of way shall be one hundred feet wide, but gives the corporation power to take and hold land for that purpose not exceeding one hundred feet in width. The railroad company may take less, but it can not take more than one hundred feet, except for the purposes mentioned. As between the corporation and the landowner and his grantees, the right of way is restricted to what was originally claimed. If it should be afterward found that additional land is required, the corporation would have to deal with those who might then be interested.

It appears from the record that plaintiff and defendant were each building spur or branch roads from their main lines to the mining district three or four miles south. To secure the right of way plaintiff purchased

from the Empire Zinc Company a strip of its land twenty-five feet in width. It took from the owner a deed which was duly recorded. 'It constructed its road upon the land so secured, and the zinc company built a fence separating the right of way so conveyed from the land it had retained. No proceedings for securing any additional land were commenced, or other steps taken, until after defendant had purchased the narrow strip of land between plaintiff's road and the mill, and had commenced grading for its road thereon.

In view of these facts plaintiff must be held to have elected to take and hold twenty-five feet for its right of way instead of one hundred feet as authorized by the statute and whatever lien upon or right to the land it may have secured by locating its road and filing its map it will be confined to the quantity it elected to take The judgment is therefore affirmed. ROBINSON, J., absent; the other judges concur.